UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1485

ROBERT H. GRAVATT III

    Plaintiff - Appellant

v.

MONTGOMERY COUNTY, MARYLAND; CAROLINE E. HEADEN;
EDWARD B. LATTNER; RASHEIM R. SMITH

    Defendants - Appellees

Appeal from the United States District Court for the
District of Maryland at Greenbelt
Judge Theodore D. Chuang
No. 8:22-cv-1296-TDC

**APPELLANT'S INFORMAL OPENING BRIEF**

Robert H. Gravatt III
Pro Se Plaintiff – Appellant
6319 Kenhowe Drive
Bethesda, Maryland 20817
Tel. 301-229-4896
gravatt@verizon.net

## INTRODUCTION

I, ROBERT H. GRAVATT III, am *pro se* Plaintiff-Appellant of the above-entitled case. This case arises from the dismissal of my Amended Complaint upon Defendants' Fed. R. Civ. P. 12(b)(6) motion. At the center of this appeal is the District Court's misunderstanding of the factual background, which led to my 42 U.S.C. § 1983 action for deprivation of my First Amendment speech rights and my Fourteenth Amendment equal protection and due process rights. At further issue is the District Court's failure to fully consider certain documents and special County Recreation clothing explicitly referenced in my complaint.

I am appealing the District Court's dismissal of the equal protection components of Counts 1, 3, and 7 as well as the Count 6 conspiracy to deprive plaintiff of rights dismissal, which was dismissed as a corollary to dismissal of Counts 1, 3, and 7. I am also appealing the District Court's dismissal of the due process component of Count 3. Finally, I am appealing the District Court's ruling of qualified immunity for the three Individual Defendants. However, I am not appealing the District Court's dismissal of Counts 8, 10 and 11 or its dismissal of the First Amendment speech retaliation components of Counts 1 and 7.

## JURISDICTIONAL STATEMENT

The District Court had original jurisdiction of plaintiff's constitutional claims under 28 U.S.C. § 1331 and supplemental jurisdiction over his state law

1

claims under 28 U.S.C. § 1367. It entered a Memorandum Opinion and Order on March 3, 2023 dismissing all claims. Plaintiff filed a timely motion for reconsideration on April 3, 2023. The motion was denied on April 27, 2023. Plaintiff then filed a timely notice of appeal on May 1, 2023. This Court now has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES ON APPEAL

1.  Whether the District Court erred in failing to construe the Amended Complaint in the light most favorable to the plaintiff in a motion to dismiss.

2.  Whether the District Court erred in failing to consider the Amended Complaint was written by a *pro se* litigant and was less well organized and precise than a professionally drafted complaint.

3.  Whether the District Court erred in its dismissal of the due process claims by failing to consider plaintiff's liberty interests of freedom to enter public space near his home, to walk freely on public lands and to associate with his neighbors.

4.  Whether the District Court erred in applying Rational Basis Review to the personal opinion of an individual who acted without authority.

5.  Whether the District Court's factual misunderstandings led to an erroneous ruling of qualified immunity.

## STATEMENT OF THE CASE

This 42 U.S.C. § 1983 case arises from an event that took place at the Bethesda Outdoor Pool on May 29, 2021 the Saturday of Memorial Day weekend and subsequent related events thereafter. In the proceeding below, the District Court failed to grasp the basic factual background of the case and the rules and policies that applied. The facts in my Amended Complaint to which I was an eyewitness were treated either as false or conclusory, and the District Court accepted the defendants' alternative version facts as true. The Court granted a motion to dismiss my Amended Complaint for failure to state a claim upon which relief can be granted as based upon defendants' version of the facts and not mine.

As I state in my Amended Complaint on May 29, 2021, I entered the Bethesda Outdoor Pool at or about 2:40 p.m. to measure the water temperature as it was a cold 52 degree day. The pool cashier had granted my entry to the facility because I held a valid annual pool pass and because of available pool space. I had planned to possibly swim later that day at 4 p.m. after a scheduled pool closure between 3 and 4 p.m. As a thirty-year patron of the pool, I knew that there had been a thermometer in the pool for two decades during the 1990's and 2000's so that there was nothing wrong with my use of similar equipment. After I placed a plastic pool thermometer into the water, Rasheim R. Smith a stranger wearing plain clothes or street clothes (i.e., long-sleeve shirt, long pants and street shoes)

3

confronted me about the thermometer in the water. Because of his clothing, I immediately knew that he was no one of any authority over the pools as the lifeguards and the Pool Manager, who were in charge of the pools, always wore special identifiable County Recreation clothing issued only to Aquatics staff. He clearly was not a pool staff member working on that particular day as he was not in a swimsuit of any type and was not equipped for water rescue. Smith insisted that I immediately remove the thermometer. I said no and that it takes a few minutes to register the temperature.

I then asked him: "Who are you?" because of his lack of County Recreation staff clothing. He replied: "I've worked here for three years." His answer was in no way responsive to my question as there are many people who regularly work at the pool such as swim team coaches, class instructors, maintenance workers, and other service workers. None of these workers wear identifiable County Recreation clothing or are pool staff members who have any authority over the pools. Some of these workers are contractors or are not even employed by County Recreation. However, the *implication* of his statement I took to mean that he was then working at the pool as a pool staff member, which I knew to be false because of his clothing. In other words, he attempted to impersonate the Pool Manager or a lifeguard. However, the true Pool Manager was visibly present on site wearing an orange "Manager" County Recreation shirt as well as many lifeguards in "Aquatics

4

Staff" County Recreation shirts.  Smith did *not* identify himself to me as being employed by County Recreation.

As Smith repeatedly ordered me to remove the thermometer, I responded that he should go look at the rules posted at the facility entrance because there was no rule against its use.  He claimed that nothing could touch the water.  I knew this to be contradicted by the Pool Rules as various items such as toys and kickboards are approved for use in the pools.  ECF 32, p. 36 § *Equipment/Toys.*  I assumed he was a non-County worker or visitor to the pool.

Two days later on Memorial Day May 31, 2021 when I returned to the pool for a scheduled swim, Smith was waiting for my return with a County police officer.  Smith handed me a document called a Disruptive Behavior Order, which described the disruptive behavior as "stalking behavior towards a lifeguard and putting a device into the pool and refusing to take the device out" that denied me access to "Montgomery County Facilities" for 90 days.  After I signed the Order to acknowledge receipt and again signed to request review, the police officer then informed me that I had just been served with the Order by Smith and that I had to immediately leave the premises or he would arrest me.  The police officer further indicated that the Order applied to the surrounding property of the pool located within Little Falls Park.  This included the parking lot as well as the landscaped perimeter of the pool facility up to Little Falls Parkway and another adjacent road.

In other words, I had stay on the other side of the road near the pool. The total area from which I was expelled comprised approximately ten acres of Little Falls Park, even though the pool area bordered by a fence comprised at most two acres.

On June 4, 2021 a review meeting was held pursuant to County law § 32-19C. At the meeting both Smith and his boss Defendant Caroline E. Headen misrepresented Smith as being the Pool Manager at the Bethesda Outdoor Pool at the time of the incident. In an email, which Defendant Edward B. Lattner handed me at the beginning of the meeting, Liz Carter identified herself as the Head Manager of Bethesda Outdoor Pool who witnessed the events of May 29, 2021 and thus as the true Pool Manager whom I had seen. In other words, the Liz Carter email proved that Smith misrepresented himself at the meeting and that his boss Headen also misrepresented his position of employment. A section of the Pool Rules that Smith belatedly claimed at the end of the review meeting that I violated was not applicable because Smith was not "The Pool Manager" or a designated assistant as stated in the Pool Rules. However, because I did not have time to carefully review any of the many documents I was handed at the meeting, I did not notice this exculpatory evidence until after the meeting where the Order was affirmed. Indeed, I *did not have notice* at the beginning of the meeting before presenting my case that Smith's Order was based upon his misrepresentation that he supposedly was the Pool Manager whose instructions must be followed. Thus, I

6

was denied of my liberty interest of freedom to enter public space without due process of law as well as my property interests in using the facility.

In the proceeding below, the District Court assumed that Smith was the Pool Manager or other pool staff member and dismissed Counts 1, 3, 6 and 7 as a result.

## ARGUMENT

### I.   The District Court Erred in Construing the Amended Complaint in a Light Unfavorable to Plaintiff

#### A. District Court Erred in its Understanding of the Factual Events

As described in the above Statement of Case section, I knew that Defendant Smith was not a pool staff member working at the Bethesda Outdoor Pool at the time of the May 29, 2021 incident because of the clothes that he was wearing. As a thirty-year patron of the pool, I knew that anyone with any authority over the pool wears identifiable County Recreation clothing. The lifeguards wear white County Recreation shirts stating "Aquatics Staff" on the back. The Pool Manager who acts as the head lifeguard is similarly clothed, with a whistle and first aid kit belt pack, but wears a bright orange shirt stating "Manager" on the back. All pool staff members wear "guard" swimsuits in order to perform water rescue involving swimming. ECF 26, Exh. 5 (photographs of Manager and lifeguard clothing). The reason for the identifiable clothing is for safety so that pool staff can be quickly summoned in emergency or first aid situations. Smith was in street clothes.

In my Amended Complaint, I state at paragraph 11:

7

> 11. Shortly thereafter Defendant Rasheim R. Smith, a **plain-clothed** unfamiliar individual at the pool, confronted Plaintiff on the pool deck and told Plaintiff to immediately remove the thermometer. Plaintiff, as a thirty-year patron of the pool and Bethesda resident, refused and stated that the thermometer takes a few minutes to register the temperature. Plaintiff then asked Defendant Smith who he was **because he was not wearing any identifiable County Recreation clothing**. Defendant Smith responded that he worked at the pool for the three years, which Plaintiff knew immediately to be false.

(ECF 19, ¶ 11 (emphasis added))

I knew his answer to be false "because he was not wearing any identifiable County Recreation clothing." I did not repeat the same words in the last sentence of the paragraph because they had been stated in the preceding sentence. However, I should have stated the *implication* of Smith's statement was what I knew to be false rather than the statement itself. My question was who he was supposed to be at that time. Smith was pretending to be someone working as a pool staff member at the time of the incident, when he visibly was not because of his clothing.

However, the District Court erroneously ruled at p. 2 of its Opinion:

> Defendant Rasheim R. Smith, who identified himself as an employee at the pool, instructed Gravatt to remove the thermometer from the pool. Gravatt refused and insisted that Smith did not in fact work at the pool because Gravatt had never seen him before.    (ECF 37, p.2)

If I had "insisted that Smith did not in fact work at the pool because I [Gravatt] had never seen him before," then I would not have asked him who he was "because he was not wearing any identifiable County Recreation clothing." Thus, the District Court has made a highly unreasonable factual conclusion in the light most

8

unfavorable to plaintiff. In my Opposition to the motion, I introduced four photographs of the identifiable County Recreation clothing (front and back of "Manager" and "Aquatics Staff" clothing) that I reference in paragraph 11 as the reason I knew Smith misrepresented himself. ECF 26, Exh. 5 (photographs). Further, as I describe the above Statement of Case section, there are individuals who work "as an employee at the pool" that do not have any authority over the pool. The District Court also came to an unreasonable factual conclusion that Smith identified himself at all. Here, the District Court has construed the Amended Complaint in the light most unfavorable to the plaintiff by accepting defendants' version of facts as true and my mine as false in a motion to dismiss.

## B. District Court Erred in Applying Pool Rules

At the end of the June 4, 2021 review meeting, Smith belatedly claimed (ECF 19, ¶ 45) that I violated a section at the beginning of the Pool Rules stating:

> The Pool Manager or their designated assistants are responsible for the operation of the pools. Their instructions must be followed at all times. (ECF 32, p. 35 top section ¶ 2.)

Smith, despite his misrepresentations to the contrary, was *not* "The Pool Manager" who was working at the time of the incident. Liz Carter was "The Pool Manager" working at the time, and I knew as a witness of thirty years that only one Pool Manager works at any one time. Further, Smith was not one of the "designated assistants" who were working at the time. The lifeguards are *ex officio* "designated

assistants" of the Pool Manager and wear County Recreation clothing designating them as "Aquatics Staff" on their shirts.

However, the emails referenced in the Amended Complaint show exactly how Smith spoke to me solely within his personal capacity and not in any official manner. The Pool Manager Liz Carter in an email referenced at ¶ 75 of the Amended Complaint (ECF 19) states:

> While working on Saturday I noticed a gentleman place a thermometer in the water during the last 15 minutes of the swim session. I then witnessed Rasheim [Smith] walk over and talk to him. ...The gentleman didn't remove the thermometer from the water and so Rasheim went into the guard office to grab some paperwork so he could get His [plaintiff's] information, after a couple minutes He did remove it and left...
>
> Liz Carter
> Head manager of Bethesda Outdoor Pool        (ECF 32, p. 19)

In an email referenced at ¶ 37 of the Amended Complaint, Miriah Auth states:

> On Saturday, May 29th, Robert [Gravatt] came to the pool just before close without paying. ... He approached the side of the pool and placed a device in the water and left it there. Rasheim [Smith] asked the staff what he was doing and they replied he was testing the temperature of the water. Rasheim said this is not allowed and went outside to talk to Robert. ...Rasheim came into the guard office and wrote a disruptive behavior report.        (ECF 32, p. 21)

These two emails show that the Pool Manager Liz Carter did not designated Smith as an assistant to speak to me. He acted without authorization. Because the Pool Manager or their designated assistants are responsible for the operation of the pools as in the rules, Smith was acting on his own behalf and not on the County's.

10

Further, as discussed above Smith did not identify himself as a County Recreation employee of any type when he answered my question about his identity with: "I've worked here for three years." If he had truthfully answered my question: "Who are you?" and told me he was a County Recreation employee from elsewhere, I would have told him to speak to the Pool Manager about my thermometer and not to me. If there were anything wrong with what I was doing at the time of the incident, then the Pool Manager Liz Carter would have spoken to me and not Smith.

Indeed, not just any Aquatics staff member has authority over the pools. The cashiers who work at the entrance to the facility are Aquatics staff members that have authority over facility entry but have no authority over the pools. Similarly, Smith had no authority over anything at the Bethesda Outdoor Pool. He did not have authority to speak to me in any official capacity. Moreover, he had no authority to issue or serve an Order under County law § 32-19C(d) because he was not an "enforcement agent" in charge of the facility as in § 32-19C(a)(2)(C). The District Court in dismissing the equal protection components of Counts 1, 3, and 7 construed the Amended Complaint in a light most unfavorable to the plaintiff in accepting defendants' version of facts as true and mine as false. I violated no rule or regulation whatsoever when I ignored the orders of a street-clothed individual.

**C.    District Court Erred in Failing to Treat Counts 1, 3 and 7 as "Class of One" Equal Protection Claims**

As the District Court accepted the defendants' version of facts as true and mine as false or conclusory in a motion to dismiss, it failed to recognize my claims of Counts 1, 3 and 7 as" class of one" equal protection claims.  This was due to defendants' false representations that I also violated the Pool Rules in two other ways:  (1) by entering the facility at 2:40 p.m. on May 29, 2021 and (2) by holding a five second or shorter conversation with a lifeguard about her car two weeks earlier.  This conversation was the basis of the "stalking behavior towards a lifeguard" claim.

Firstly, defendants' false claims that I violated COVID-19 restrictions by entering the facility at 2:40 p.m., accepted as true in the District Court's March 3, 2023 Opinion, was later modified by the Court in the April 27, 2023 Order at p 2 stating:

> Moreover, the Court finds that reconsideration of the matter based on J.R. Exhibit 10, the version submitted by Gravatt, does not alter the result.  The two versions are not different on matters material to this case.  Although the Court referenced restrictions on pool usage during the COVID-19 pandemic in its original ruling, it finds that it reaches the same result even if Gravatt did not violate any COVID-19 restrictions at the time of the relevant incident.   (ECF 44, p. 2.)

I entered the facility at 2:40 p.m. with proof of a valid pass and with authorization from the cashier at the entrance.  I violated no rule in doing such even if COVID-19 restrictions had been still applicable.

12

Secondly, defendants' false claim that I violated a rule: "Socializing with or distracting the pool staff is prohibited[1]" is also groundless. The words "socializing with" mean holding an extended conversation with someone, and the word "distracting" means preventing someone from doing something at the time. I did neither. The fact that a teenaged lifeguard had an unpredictable psychological reaction to being asked about the year of her car does not mean that I violated the rule. Moreover, I saw that she did not look away from the pool at the time or leave her post. Although the District Court did not address this brief conversation in the context of the equal protection claims, it did find that my statements "regardless of content, violated this pool rule" in the context of speech retaliation. ECF 37, p. 14. This finding is clearly erroneous and a misinterpretation of the rule. The rule is not a complete ban on speech with pool staff. I have had other brief conversations with pool staff without repercussions. For example, I once asked a guard for assistance in getting out of a full-body rubber wetsuit with a stuck rear zipper, and she got out of the guard chair to assist me. On another occasion in a different year I spoke the Pool Manager about his car, and he did not "become upset." As with the other rules referenced by defendants, I did not violate this rule either in speaking to the lifeguard. Indeed, the rule was not the basis of the Order.

However, I state in my Amended Complaint at ¶ 19:

---

[1] Defendants did not assert that I violated this rule until the motion to dismiss reply brief.

13

19.  Plaintiff violated no rule or regulation and committed no crime or violation of law but was barred from the Bethesda Outdoor Pool for the entire regular Summer 2021 season in deprivation of his rights under the Equal Protection Clause of the Fourteenth Amendment. … (ECF 19, ¶ 19)

The defendants by their attorneys contested this statement by fabricating that I violated rules, when I did not.  Accordingly, the District Court erred in not treating my equal protection claims as "class of one" claims as in *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000) or *Willis v. Town of Marshall,* 426 F.3d 251, 263 (4th Cir. 2005) and in the light most favorable to plaintiff.   Again, the District Court treated defendants' version of facts as true and mine as false or conclusory in a motion to dismiss.

## II.    District Court Erred in Failing to Consider Amended Complaint was Written by a *Pro Se* Litigant

Firstly as discussed in the subsection A above, the district court failed to account for my imprecise *pro se* writing in describing what transpired in paragraph 11 of the Amended Complaint.  As a swimmer, I assumed that it was obvious that someone in plain-clothes or street-clothes was not a lifeguard or the Pool Manager and was not working poolside as pool staff member at the time of the incident. Any swimmer would know this fact.  Further, my last sentence of ¶ 11 should have stated: "Smith responded that he had worked at the pool for three years, which Plaintiff took to mean that he was then working as a pool staff member which Plaintiff immediately knew to be false from his lack of County Recreation

14

clothing." In addition, there are certain key facts that are a background to the May 29, 2021 incident that appear in later paragraphs such as the existence of a thermometer in the pool for two decades, the 1990's and 2000's. This background fact does not later appear until paragraph 16:

> 16. In the review meeting there was also a discussion about the County's failure to replace a thermometer, which had once existed in the pool during the 1990's and 2000's between Plaintiff and Defendant Headen. She claimed Plaintiff supposedly only needed to ask to get a replacement thermometer installed during Covid, as if he were the only pool patron who was concerned about the cold "Polar Bear" temperatures. (ECF 19, ¶ 16.)

Moreover, reference to the important Liz Carter Head Manager of Bethesda Outdoor Pool email proving Smith misrepresented himself at the review meeting as "The Pool Manager" and as being in charge of the facility does not occur until ¶ 75. Here, the District Court erred in not liberally construing my complaint as a *pro se* litigant. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Secondly, I clearly was attempting to state a "class of one" or *Olech* equal protection claims in my Amended Complaint. Nowhere in Counts 1, 3 and 7 do I associate myself with a class (i.e., race, gender or any discrete identifiable group). In my Amended Complaint I allege that the Individual Defendants "arbitrarily and capaciously" and "intentionally" discriminated against me by excluding me from the pool. Because the discrimination was arbitrary and capricious (i.e. irrational) and intentional, the reason for the discrimination was based upon personal animus

ECF 19 ¶¶ 30, 53, 80 & 82. All three Individual Defendants fabricated wrongdoing on my part or acted vindictively when I had done nothing wrong. Indeed, Smith in his false role as "The Pool Manager" purported that I had to do whatever he said and thus retaliated against me as for noncompliance. The other similarly situated individuals who were treated more favorably to me (the comparators) were all other pool patrons who were not expelled from the pool, and no other patron was expelled. Again, the District Court erred in not liberally construing my *pro se* equal protection claims as a "class of one" or *Olech* claims.

Thirdly, I state in Amended Complaint that I was deprived of "liberty of freedom from government interference in his swimming and *his life.*" ECF 19, ¶ 19. The district court narrowly restricted my life to being one only as a swimmer. As a thirty-year patron of the pool and Bethesda resident, there were many other liberties taken from me such as my freedom to associate with my neighbors at the pool since the Bethesda Outdoor Pool functions as a community pool. In other words, the pool expulsion functioned as a partial exile from my community. Moreover, the land on which the pool is situated is part of Little Falls Park. The expulsion effected my life in other ways by depriving me of certain uses of the park unrelated to the pool itself, as will be discussed in the next section on due process. Again, the District Court erred in not liberally construing my liberty

USCA4 Appeal: 23-1485    Doc: 8    Filed: 05/30/2023    Pg: 17 of 32

interests to be anything other than in swimming, which it found to be non-existent.

ECF 37, p. 10.

## III. District Court Erred in Failing to Consider Plaintiff's Liberty Interests in Due Process Claim

As discussed above the District Court did not at all consider plaintiff's

liberty interest of freedom from government interference in *his life*, which must be

liberally construed. Firstly, in a similar case *Kennedy v. City of Cincinnati*, 595

F.3d 327 (6th Cir. 2010) which the District Court cited in its Opinion at p. 16, it

found:

> the United States Court of Appeals for the Sixth Circuit held that an
> individual alleged to have leered at children and who was banned
> from all city recreation department facilities without a hearing had a
> protected liberty interest in remaining in remaining in "a public place
> of his choice" and that he was thus entitled to due process before he
> could be deprived of that right. (ECF 37, p. 16.)

If *Kennedy* had a protected liberty interest in remaining in "a public place of his

choice" of the Mt. Washington pool in the City of Cincinnati, then I had a

protected liberty interest in remaining in a public place of my choice of the

Bethesda Outdoor Pool in Montgomery County, Maryland. *Id.* at 335-36. Further,

in *Kennedy* the Sixth Circuit held that the plaintiff's property interest of a $10 pool

pass[2] was *de minimis* and not "sufficient to invoke the procedural protections of the

Due Process Clause." *Id.* at 335.

---

[2] My annual pool pass was $320. ECF 19, ¶ 94.

USCA4 Appeal: 23-1485    Doc: 8    Filed: 05/30/2023    Pg: 18 of 32

Secondly, I had a protected liberty interest to move freely within Little Falls Park. I walk or sometimes run in the park on the Capital Crescent Trail, which is immediately adjacent to the West side of Bethesda Outdoor Pool, almost daily. However, because I was expelled from ten acres of the park including outside of the pool area, I was unable to walk on the connecting path that runs through the pool parking lot to the Little Falls Park Trail which runs through the park on the East side of the pool. Thirdly, even though the pool is municipally owned it functions as a community pool for the surrounding area. I was deprived of my liberty interest to associate with people I had known for years as a result of my pool expulsion. These are both protected liberty interests unrelated to swimming.

My situation was similar to that of *Kennedy*. I violated no rule or regulation of the pool and committed no crime or violation of law but was expelled from the pool. *Kennedy* like me was barred from city recreation facilities when he violated no rule and committed no crime. It was also disputed whether his expulsion applied to the one facility or all. *Id.* at *334.* Moreover, I was deprived of use of parkland at the exterior to the pool and thereby deprived of my right to move "to whatsoever place one's own inclination may direct" within a public park as identified in Blackstone's Commentaries cited in *Kennedy* at 335-36. W. Blackstone, *Commentaries on the Laws of England* 130 (1765). However, *Kennedy* was barred from recreation facilities for allegedly leering at children,

where "parents had expressed concerns regarding Kennedy's behavior." *Id.* at 332. In my case there were no complaints from pool patrons either about my measuring pool water temperature or about my brief interaction with a lifeguard. I was expelled from the pool for irrational and intentional reasons unrelated to patrons. Thus, my case differs from the *Kennedy* case or the *Willis v. Town of Marshall* 426 F.3d 251 (4th Cir. 2005) case in this Circuit where "Community members were concerned about their children being exposed to Willis' dancing and a number of them complained to members of the Depot Committee." *Id.* at 254. *Willis* also like me did not violate any of the posted rules, but was expelled from the Depot.

As in section I above, the District Court in its discussion of Due Process again made a substantive factual background error about the critical importance of the email from Liz Carter, Head Manager of Bethesda Outdoor Pool, referenced at ¶ 75. Because Smith was not the Pool Manager at the time of the incident, he was also not the County's "enforcement agent" as defined in County Code § 32-19C(a)(2)(C).  § 32-19C(a)(2)(C) states:

> (2)    Enforcement agent means:
> …
>    (C) an assistant director, division chief, service chief, or other person in charge of a facility, who is designated by a Department Director;    (ECF 32, p. 1.)

Liz Carter was the Pool Manager at the time of the incident and as a result was the person in charge of the facility. Thus, Liz Carter was the true County's

enforcement agent under § 32-19C(a)(2)(C) and not Smith. Smith misrepresented

himself both as the Pool Manager and as the County's enforcement agent.

However, the Order was affirmed as a result of Defendants' Smith's and Headen's

false representations on June 4, 2021 that Smith was the Pool Manager at the time

of the incident and thereby County's "enforcement agent." ECF 19, ¶ 75. Lattner

wrote on June 4, 2021 in his affirmation quoted in ¶ 61 of the Amended

Complaint:

> Petitioner failed to show that the actions of the County's enforcement
> agent were not reasonable under the circumstances. Affirmation (as
> modified) is reasonable and fair. (ECF 32, p. 22.)

In other words, with *no advance notice* that Smith would misrepresent himself at

the end of the review meeting as the Pool Manager and as County's "enforcement

agent" or without advanced review of the Liz Carter email, I was unable to present

exculpatory evidence that Smith acted without authority.

As discussed above, the District Court failed to consider my protected

liberty interests of my right to remain in a public place of my choice, my right to

move freely in public space and my freedom to associate with members of my

community. However, the District Court misapplied the *Mathews v. Eldridge* 424

U.S. 319, 334-35 (1976) test to the circumstances which involved protected liberty

interests. Firstly, the procedural protection which should have been employed was

to have the County or its agency County Recreation present its case against me

first, so that I would know exactly what claims I am defending myself against as in a criminal case. In my case, this was crucial because I had *no notice* until the very end of the review meeting that Smith's Order was based on his misrepresentation of having been the Pool Manager whose instructions purportedly must be followed. The second obvious procedural protection, which should have been employed, was to email me the documents (emails from staff) that were dumped on me at the beginning of the meeting instead of emailing them on an *ex parte* basis to the County's lawyer Lattner. It was of no additional burden or cost to the County to email me the documents and postpone the review meeting by a day or two, instead of dumping them on me at the beginning of the meeting. Again, the Liz Carter email was crucial exculpatory evidence proving Smith to have misrepresented himself. In fact, County Recreation should have been required to bring the Pool Manager Liz Carter to the meeting, as safeguard under the *Mathews* test.

Lastly and most importantly was the use of a County attorney as a "reviewing authority" in a case involving protected liberty interests. Lattner served as the attorney for the County who communicated with his clients before the meeting, reviewed and marked his clients' emails as exhibits without allowing me to object, and then at the same time served as a supposed "unbiased" tribunal. Indeed, other than the individual who issued the Order, a professional advocate for the County was the most biased tribunal available. He rigged the hearing so that I

21

was unable to respond to Smith's belated claim that I must do whatever he says. Moreover, Lattner defied the statutory definition of disruptive behavior in County statute § 32-19C(b) upon which I based my presentation. He knowingly and intentionally punished me when I had done nothing wrong.

However, the legislature in the County statute specified that a County Attorney was *not* to be the "reviewing authority." The County statute § 32-19C(a)(1) specifies:

> (1) Reviewing authority means the Chief Administrative Officer or an Assistant Chief Administrative Officer. An enforcement agent must not serve as reviewing authority. (ECF 32, p. 1.)

Lattner was *not* the Chief Administrative Officer ("CAO") nor was he an Assistant CAO. When I questioned him about this at the review meeting on June 4, 2021 he misrepresented himself as having "authorization." However, since the legislature had specified that any one of four individuals, the CAO and three Assistant CAO's, who typically hold masters degrees in public administration, were to serve as "reviewing authority" then Lattner plainly did not have authorization from each of these four individuals. Indeed, he did *not* have authorization to act as "reviewing authority" from the then and current CAO, Richard Madaleno[3], who took over the position starting in August 2020, or any Assistant CAO. In other words, Lattner

---

[3] Defendants produced an expired document delegating the past authority of a former CAO Andrew W. Kleine, who was forced to resign amid ethics violations in August 2020. ECF 36, p. 34. Only the legislature can change the meaning of reviewing authority in the statute § 32-19C(a)(1).

was a rogue employee who usurped the role of "reviewing authority" from the

CAO and the Assistant CAO's. Accordingly, under the *Mathews* test, there was no

additional government burden in using the CAO or an Assistant CAO as the

reviewing authority instead of an unauthorized County attorney, who acted above

the law.

Because all three Individual Defendants at the review meeting made material

misrepresentations of fact, the District Court misapplied the *Mathews* test to the

circumstances involving protected liberty interests where the risk of an erroneous

deprivation was near certain. The Court also erred in finding that I "succeeded in

convincing Lattner to modify the Order to bar Gravatt from the Bethesda Outdoor

Pool only" at the meeting. ECF 37, p 11. The statute § 32-19C(d)(1) specifies:

> (d) If a person engages in conduct prohibited by subsection (b), an
> enforcement agent may issue and personally deliver a written order to
> the person that:
>
> (1) denies the recipient access to that public facility for a period not
> exceeding 90 days; (ECF 32, p. 1)

Lattner on his own restricted the Order to what the statute states: "to *that* public

facility" independent of Smith not being an enforcement agent. In no sense was

the meeting with an unauthorized lawyer pretending to be "reviewing authority"

Due Process of Law. It was nothing other than a charade where Smith's mistake of

"Montgomery County Facilities" was corrected. I had *no notice* that Smith's Order

was based upon his misrepresentation that he supposedly was the Pool Manager

whose instructions must be followed. If *Kennedy* was entitled to his day in court

for his pool expulsion without due process of law, then I am entitled to mine.

## IV. District Court Erred in Applying Rational Basis Review to the Personal Opinion of an Individual Who Acted Without Authority.

The District Court in its Opinion held at pp. 9-10:

> Second, the allegations in the Amended Complaint are sufficient to conclude that the County had a rational basis for issuing the Order. The events at issue occurred in the late spring of 2021, during the COVID-19 pandemic, at a time when social distancing and other precautionary measures were still in full effect at the Bethesda Outdoor Pool. In that context, an order temporarily barring an individual who arrived at the pool outside his scheduled time slot, dipped an item into the pool, and refused to comply with repeated orders to remove it was rationally related to the legitimate governmental purposes of preventing contamination of the pool as well as enforcing pandemic-related rules about timely entry of scheduled pool patrons and promoting safety by requiring compliance with staff directions in the area of the pool.          (ECF 37, pp. 9-10)

Firstly, my entry at 2:40 p.m. was completely authorized by the pool cashier

at the facility entrance, and there was nothing improper or untimely about it. This

was litigated at length in my motion for reconsideration. ECF 41, 43, 44. I did not

violate any of the COVID-19 restrictions as claimed by defendants in the motion to

dismiss. Secondly, as discussed in sections above Smith visibly was not working

as the Pool Manager or as a lifeguard or "designated assistant" at the time of the

incident. He declined to properly identify himself as a County employee of any

type. I was under no obligation to comply with orders issued by an unidentified

individual in street-clothes. Indeed, Smith's instruction was ridiculous.

24

USCA4 Appeal: 23-1485     Doc: 8     Filed: 05/30/2023     Pg: 26 of 32

At the time of the incident, it was further apparent that Smith was
completely ignorant of the Pool Rules governing Equipment/Toys. He claimed
that nothing could touch the water, which was completely contrary to the Pool
Rules. The Pool Rules *Equipment/Toys* section states:

> 1. ... Small toys may be allowed in the Teach or Leisure Pool at the
> Manager's discretion.
> ...
> 3. The use of mask and snorkels by patrons 14 an up in the lap lanes
> may be permitted at the discretion of the Pool Manager. ...
> 4. Specialized equipment, such as kickboards, fins or paddles, is only
> permitted in the lap lanes.     (ECF 32, p. 36)

In other words, under certain conditions plastic toys, plastic snorkels, plastic
training paddles, plastic masks as well as other plastic items not mentioned such as
goggles are permitted in the pools as they are deemed not to contaminate the water.
However, the fact that there had once been a plastic swimming pool thermometer
similar to mine in the same pool for two decades, the 1990's and 2000's, was what
caused me to believe that Smith was ignorant of swimming or pool operations.

Smith definitely was not the Pool Manager; he was not a lifeguard; he was
not a County "enforcement agent;" and he was not even authorized to speak to me
in any official manner. He was *unauthorized* to issue an Order under the statute
because he was not in charge of the facility. Smith alone issued the Order not the
County. The District Court erred in finding that "the County had a rational basis
for issuing the Order" when it was Smith's Order. This is a fundamental factual

misunderstanding of the District Court. The County's statute § 32-19C(d) allows

for an "enforcement agent" to issue an Order, but it is the enforcement agent's

Order and not the County's Order *per se*. *See e.g.,* § 32-19C(d)(3).

In *New York State Bd. of Elections v. Lopez Torres,* 552 U.S. 196, 209

(2008) Justice Stevens wrote:

> But as I recall my esteemed former colleague, Thurgood Marshall,
> remarked on numerous occasions: "The Constitution does not
> prohibit legislatures from enacting stupid laws."

In the proceeding below, there was no ban on swimming pool thermometers issued

by the County legislature, by the Recreation Department rules committee or by the

County Executive in the form of an executive order. Indeed, if there were a ban

issued by a legitimate governmental authority on fins, kickboards and other items

commonly used in swimming pools, then it would pass Rational Basis Review.

However, the personal opinion of an individual, unauthorized to act, about a

thermometer or any other equipment commonly used in pools as causing water

contamination is not subject to Rational Basis Review. The District Court has

erred in treating Smith's personal opinion about pool contamination as having been

the official policy of the County government, when it was not. In fact, Smith's

boss Headen claimed at the review meeting that the thermometer once present in

the pool could be replaced at my request. ECF 19, ¶ 16. In no sense was my pool

26

expulsion rationally related to "preventing contamination of the pool," to ignoring

Smith's orders or to anything else as erroneously found by the District Court.

## V.    District Court's Factual Misunderstandings Led to an Erroneous Ruling of Qualified Immunity.

In the ruling on qualified immunity, the District Court held:

> The test to determine whether a government official is entitled to qualified immunity consists of two parts which may be considered in any order. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).  The first is to determine whether the allegations underlying the claim, if true, would establish a violation of a federal right.  *Davison,* 19 F.4[th] at 640.  The second part is to consider whether the constitutional right was a "clearly established" right of which "a reasonable person would have known" at the time. *Id.*

The District Court's first and foremost error in its ruling of qualified

immunity is that it failed to grasp that both Smith and Lattner were *unauthorized* to

act as government officials.  Both were rogue employees who acted *without*

*authority* under County statute § 32-19C.  Despite Smith's false representations to

the contrary, he was not the Pool Manager at the time of the incident and thereby

not an "enforcement agent" in § 32-19C(a)(2)(C) who had authority to issue or

serve an Order in § 32-19C(d).  Similarly, Lattner did not have authorization to act

as a "reviewing authority" to review an Order as discussed in Section III above.

He was not the County CAO or an Assistant CAO in § 32-19C(a)(1) and had no

then current valid authorization to appear at a review meeting as a "reviewing

authority."  He acted outside of the scope of his employment and not as an official.

USCA4 Appeal: 23-1485    Doc: 8    Filed: 05/30/2023    Pg: 28 of 32

Because both Smith and Lattner impersonated government officials, neither is entitled to the qualified immunity of an official.

However, because the District Court failed to treat my Equal Protection claims as "Class of One" or *Olech* claims as described in the first two sections above, the Court erred in its determination that there was no clearly established law at the time of the incident. ECF. 37, pp. 16-17. Indeed, the *Olech* and *Willis* cases as well as many others in various Circuits clearly established that arbitrary, irrational and intentional discrimination against an individual was an equal protection violation. My case resulted in a three-month expulsion from the pool, which was the same amount of time that the Village of Willowbrook insisted on an excessive water easement on the *Olech* property before relenting. See *Village of Willowbrook v Olech,* 528 U.S. 562, 563 (2000).

All three Individual Defendants were present at the review meeting during the discussion about a replacement swimming pool thermometer for the one that was once present in the pool. Moreover, all three Individual Defendants were present at the review meeting when Smith explained why the pool closed early for the day unannounced at 3 p.m. ECF 19, ¶ 12(2). Smith cited as the reason the temperature rule referenced in the Pool Rules *Weather* section:

> 3. During periods of cool weather, outdoor pools will not open when the temperature is below 70 degrees. If the temperature falls below 70 degrees the pool will stay open unless conditions merit closing for safety reasons.     (ECF 32, p. 37)

28

In other words, all Individual Defendants were fully aware that the pool was being operated at a temperature of 52 degrees, which was 18 degrees below the stated minimum safe level of operation. However, because I placed a thermometer in the water to measure temperature over my own personal safety concerns, I was expelled from the pool for the season. Thus, no reasonable person could have believed at the time of Order issuance or at time of the review meeting that I was not being discriminated against for arbitrary, irrational, and intentional reasons in violation of equal protection of the laws as well-established in "class of one" or *Olech* equal protection cases. Moreover, no reasonable person could have believed that the unlawful discrimination was not one based on personal animus or malice. Thus, none of the three Individual Defendants are entitled to qualified immunity from my equal protection claims.

Therefore, the District Court's numerous misunderstandings of fact, which resulted from its accepting defendants' version facts as true and mine as false or conclusory, led to an erroneous ruling of qualified immunity in the proceeding below.

## CONCLUSION

Since the District Court treated the underlying facts of my case as false or conclusory and accepted the defendants' version of facts as true, my case was dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as

described above. At minimum, the District Court erred in not treating certain facts of the case as disputed facts in a motion to dismiss. However, in a motion to dismiss, the allegations in a complaint are to be treated in a light most favorable to the plaintiff. In the proceeding below, the District Court did the exact opposite. Due to the factual nature of this appeal, I hereby request oral argument of this case.

## RELIEF REQUESTED

WHEREFORE, I respectfully request that this Court reverse the District Court's dismissal of the Equal Protection components of Counts 1, 3, and 7. I further request reversal of the related dismissal of Count 6, the conspiracy to deprive plaintiff of rights claim. I also respectfully request that this Court reverse the District Court's dismissal of the Due Process component of Count 3 and that this Court reverse the ruling of qualified immunity for the Individual Defendants. Upon reversal I respectfully request that my case be remanded to the District Court below for further proceedings.

## PRIOR APPEALS

I have filed no prior cases in this Court.

Respectfully submitted,

Robert H. Gravatt III
6319 Kenhowe Drive
Bethesda, Maryland 20817
301-229-4896

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May 2023, a copy of the foregoing

was mailed by first-class mail, postage prepaid to Defendants-Appellees' counsel:

Donna McBride, Esq.
Miller, Miller & Canby
200-B Monroe Street
Rockville, MD 20850

Robert H. Gravatt III